1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CRAIG L. BOWENS,

11              Petitioner,              No. CIV S-08-CV-1489 LKK CHS

12       vs.

13   DENNIS K. SISTO,

14              Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16                                I.  INTRODUCTION

17              Petitioner, Craig L. Bowens, is a state prisoner proceeding pro se with a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an indeterminate

19   sentence of twenty-six years to life following his 1987 jury conviction for first degree murder with

20   a penalty enhancement for use of a firearm.[1]  Here, Petitioner does not challenge the constitutionality

21   of his conviction, but rather, the execution of his sentence and, specifically, the 2007 decision of the

22   Board of Parole Hearings (the "Board") finding him unsuitable for parole.

23                                II.  ISSUES PRESENTED

24   _____

25        [1] Petitioner also stands convicted of two counts of robbery and one count of burglary.
26   Sentencing on these convictions was stayed pursuant to a successful completion of the sentenced
     imposed for his first degree murder conviction, which was twenty-six years to life.

1

Petitioner sets forth multiple grounds for relief in his pending petition. Specifically, his claims are as follow:

1)   His due process rights were violated by the Board's failure to designate a person to be present at his hearing to ensure that all facts relevant to the decision be presented, pursuant to section 3041.5(a)(3) of the California Penal Code.

2)   The procedures employed by the Board to determine parole suitability pose a substantial risk that Petitioner will serve a sentence disproportionate to his individual culpability, in violation of the cruel and unusual punishment and due process clauses of the United States Constitution.

3)   His due process rights were violated by the participation of state appointed counsel and the deputy district attorney in his parole suitability hearing.

4)   Section 3043 of the California Penal Code, which permits the Board to consider victim statements when determining parole suitability, is invalid.

5)   Despite being sentenced to a term of 26 years to life, he is not a life prisoner, but is instead serving a determinate sentence.

6)   His indeterminate sentence of twenty-six years to life has been transformed to a determinate sentence of  as a result of the application of sentence reduction credits, thus he can no longer be classified as a "life prisoner."

After careful consideration of the record and applicable law, it is recommended that the petition for writ of habeas corpus relief be denied.

### III. FACTUAL BACKGROUND

The basic facts of Petitioner's commitment offense were summarized by the Presiding Commissioner at Petitioner's parole hearing as follows:

On January 6th, 1986, at approximately 3:17 p.m., the Concord Police Department received a telephone call from Terri, that's T-E-R-R-I, Viscia, V-I-S-C-I-A. She informed police that she was at 4447 Fallbrook Road in Concord. She indicated to the police dispatcher that she had just been shot in the head. She informed the dispatcher that the responsible person might still be inside the residence. The dispatcher kept Ms. Viscia on the phone and dispatched police units to the above residence.

Upon arrival, the first police officer attempted to open the front door,

but found it locked.  The officer asked Ms. Viscia via the police dispatcher to unlock the door.  Ms. Viscia indicated that she was physically incapable of doing so.  In response, the investigating officer kicked open the door and immediately searched the residence to determine whether there was anyone else inside the residence. During a search of the residence, Ms. Viscia was able to crawl to the bedroom from the bathroom and unlock the door from the inside. The first officer to reach her observed that she was bleeding and had dry blood on her back and arm.  Michael Tofanelli, that's T-O, F as in Frank, A-N-E-L-L-I, then 24 was lying on the bed in the master bedroom unconscious but breathing.  His eyes were glazed over, or were glazed, but officers detected he had a pulse.

The two victims were taken to Mount Diablo Hospital, while police officers continued to search the residence.  Officers observed that the house appeared to have been ransacked with drawers having been left open and clothing having been disturbed.  Officers found keys in Mr. Tofanelli's wallet, which were found to fit the vending machine located in the garage.  While searching the machine, officers found 42 one hundred dollar bills, 38 fifty dollar bills, and 45 twenty dollar bills, totaling 7,000 dollars.  In the kitchen cabinet, officers found various items, which could be used to find drugs.

At the hospital, investigating officers attempted to question Ms. Viscia, due to Mr. Tofanelli being unable to answer questions.  At first, Ms. Viscia was unable to elaborate on the information she had given to the first officer at the scene.  When she was found, she was holding her right hand to the back of her head and she stated, quote, 'They shot us, they tried to kill us.  Am I going to die?' end quote. Ms. Viscia later testified that she said very little to the investigating officers while at the hospital, because she thought Michael Tofanelli would be able to answer their questions.  She was later informed by one of the nurses that Michael Tofanelli had died.

Ms. Viscia was subsequently able to identify co-defendant David Stevenson as the person who had shot her.  She had been uncertain about the co-defendant's last name, but was reminded by Richard Egan, E-G-A-N, who had visited her at the hospital.  Ms. Viscia later testified that a male, later identified as David, called and spoke to her and to Mr. Tofanelli on the offense date.  Ms. Viscia knew David and recognized him when he came to her house later that day, January 6th,
1986.  After David arrived, Ms. Viscia took a shower and dressed. At that point, she was unaware that anyone else was inside the residence other than herself, Michael Tofanelli and Dave.  Once dressed, Ms. Viscia observed the defendant, Craig Bowens was also inside the residence.

After Ms. Viscia returned to the bedroom, Mr. Tofanelli entered the bedroom and told her that he was going to take a shower.  As Ms. Viscia was removing makeup from a purse, she indicated that the co-

3

defendant slapped her across the back of the head without warning or without apparent provocation. Ms. Viscia, who was frightened by the co-defendant's behavior, went into the bathroom to inform Tofanelli. As she went into the bathroom, she turned and observed the co-defendant removing a small chrome automatic pistol from the area of his waistband.

Ms. Viscia went into the bathroom and told Tofanelli about what transpired between she and the co-defendant. Tofanelli, who appeared incredulous put on a sweatshirt and briefs and opened the bathroom door. Tofanelli immediately knelt to his knees and put both hands in the air. Ms. Viscia then observed the defendant standing in the bedroom. The defendant stated, quote, 'Tell your old lady to get in the shower.' After getting into the shower, Ms. Viscia could see in the crack between the door and the frame that defendant was holding both arms straight out from the shoulder as though he were holding a gun.

Ms. Viscia was left alone in the bathroom and heard what sounded like ransacking going on in the bedroom. She heard someone ask where the money was and she heard Mr. Tofanelli say that there was not any money. She also heard the co-defendant state, quote, 'You said there [was a] lot of money here,' end quotes. After Mr. Tofanelli returned to the bathroom, he sat down in the shower with Ms. Viscia. She indicated that they both heard noise emanating from the phone intercom and Tofanelli indicated that he would come back and take care of it.

After he left the bathroom, the buzzing sound stopped. After the stereo in the bedroom was turned up, Ms. Viscia heard Michael Tofanelli asking, quote, 'What are you guys doing,' end quotes. She then heard the sound of a shot. The co-defendant then entered the bathroom, opened the shower door and twice shot Ms. Viscia. Some minutes later, Terri Viscia came out of the shower and observed Michael Tofanelli lying on his back across the bed. She took the phone back to the bathroom and locked the door. She called the police from the bathroom and did not leave that room until police arrived.

Ms. Viscia stated that money was missing from her wallet and also from Michael Tofanelli's wallet. Prior to the shooting, she estimates that she had 120 dollars in her wallet. In addition, she indicated that 27 dollars was [sic] enclosed in an envelope, was [sic] also in her wallet. When she reclaimed the wallet, the 120 dollars was gone, but the 27 dollars was still in the envelope. She estimates that Michael Tofanelli had anywhere from 300 dollars to 500 dollars in his wallet.

She informed police that Michael Tofanelli kept an Uzi machine pistol in a compartment in the headboard in the master bedroom. She also indicated that he kept a .22 automatic in the master bedroom. The investigating officer did locate the .22 automatic, but the Uzi was

4

1          not on the premises.

2          Ms. Viscia had been shot in the back of the head, but the bullet had
           fragmented.  No surgical procedures were done to remove those
3          fragments.  The certificate of death indicates that Michael Tofanelli
           died on January 8th, 1986.  The causes of death are listed as, quote,
4          'gunshot would [sic] of the head and stab wound of the heart,' end
           quotes.
5
           The autopsy indicates that Michael Tofanelli had been stabbed four
6          times in the chest with at least one of these wounds having, quote,
           'cause a very significant wound in the heart, with hemorrhage and
7          actual death of heart muscle in that area.  And even though this was
           sutured at the hospital, in my opinion, I believe that his was also a
8          potentially fatal wound,' end quotes.

9          There was also a single gunshot wound to the back of the head.  The
           entry wound was described as, quotes, 'stellate,' that's S-T-E-L-L-A-
10         T-E, end quotes, which indicates the gun was held against the back
           of the head.  The bullet was apparently removed from a point just
11         behind the forehead.  There was also a slash type wound on Michael
           Tofanelli's neck, but this wound had not apparently injured any blood
12         vessels.  There was also evidence of a bruise over Tofanelli's left eye.

13    (Ans. Ex. 1A at 67-74).

14         Following a jury trial, Petitioner was found guilty of first degree murder with a penalty

15    enhancement for use of a firearm.  Petitioner was sentenced to twenty-six years to life imprisonment

16    with the possibility of parole.  His minimum eligible parole date passed on June 10, 2003. On January

17    23, 2007, Petitioner appeared before the Board of Parole Hearings for his second subsequent (third

18    overall) parole consideration hearing.  After considering various positive and negative suitability

19    factors, the panel determined that Petitioner would pose an unreasonable risk of danger to society if

20    released, and concluded that he was not suitable for parole.  Petitioner sought habeas corpus relief

21    from this decision in the Contra Costa County Superior Court.  The court denied his petition on

22    October 15, 2007 with a reasoned opinion.  Petitioner subsequently sought habeas corpus relief in

23    the California Court of Appeal, First Appellate District and the California Supreme Court.  The

24    petitions were denied without comment on January 10, 2008 and March 12, 2008, respectively.

25    Petitioner filed this federal petition for writ of habeas corpus on June 27, 2008.  Respondent filed an

26    answer on September 2, 2010 and Petitioner filed his traverse on November 5, 2010.

                                                        5

1          **IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW**

2          This case is governed by the provisions of the Antiterrorism and Effective Death

3  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after

4  its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

5  F.3d 1484, 1499 (9th Cir. 1997).  Under AEDPA, an application for a writ of habeas corpus by a

6  person in custody under a judgment of a state court may be granted only for violations of the

7  Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375

8  n. 7 (2000).  Federal habeas corpus relief is not available for any claim decided on the merits in state

9  court proceedings unless the state court's adjudication of the claim:

10              (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established federal law, as
11              determined by the Supreme Court of the United States; or

12              (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
13              State court proceeding.

14  28 U.S.C. § 2254(d).  *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*,

15  529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).  This court

16  looks to the last reasoned state court decision in determining whether the law applied to a particular

17  claim by the state courts was contrary to the law set forth in the cases of the United States Supreme

18  Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d

19  911, 918 (9th Cir. 2002).

20                          **V.  DISCUSSION**

21  **A.  Due Process (Claim One)**

22          Petitioner claims that his right to due process of law was violated during his parole

23  consideration hearing because the Board failed to designate, pursuant to section 3041.5(a)(3) of the

24  California Penal Code, "a person to be present to ensure all facts relevant to the decision be

25  presented, including, if necessary, contradictory assertions as to matters of fact that have not been

26  resolved by departmental or other procedures."  The Contra Costa County Superior Court considered

and rejected Petitioner's claim on collateral review, explaining its reasoning as follows:

> Petitioner first claims that the Department's failure to designate a person to be present at his hearing, as provided for in Penal Code section 3041.5(a)(3), violated the due process clause. (Petition at 14) Specifically the Penal Code section states that:
>
>> at all hearings for the purpose of reviewing a prisoner's parole suitability, or the setting, postponing, or rescinding of parole release dates the following shall apply: . . . (3) unless legal counsel is required by some other provision of law, a person designated by the Department of Corrections and Rehabilitation shall be present to ensure that all facts relevant to the decision be presented, including, if necessary, contradictory assertions as to matters of fact that have not been resolved by departmental or other procedures.
>
> (Pen. Code §3041.5(a)(3))
>
> Penal Code section 3041.7 provides that a life prisoner has a right to counsel at any hearing "to set, postpone or rescind a parole release date;" petitioner contends that the right to an attorney was not extended to hearings on parole suitability. (Petition at 15) He argues that because the prisoner has no specified right to an attorney at suitability hearings, the Department should have designated a person to represent his interests and the overall interest of fairness. (Petition at 15)
>
> The Department, in fact, designated a person to represent petitioner's interests and the interests of fairness by appointing counsel for petitioner. If petitioner did not wish to be represented by counsel he did not have to request counsel or he could have later waived the representation of counsel. The Board explained to petitioner that he had the right to waive representation by counsel at the hearing. (Exhibit D at 16) The Board explained that on May 26th, 2006, petitioner had signed a statement requesting the appointment of counsel. (Exhibit D at 17). After a consultation with petitioner off the record, petitioner's counsel stated that petitioner had been confused but that it was "his desire that [the attorney] remain on the case and represent him." (Exhibit D at 18) Since petitioner affirmatively requested counsel on two occasion [sic], he cannot now claim some type of constitutional violation for the appointment of such counsel.

(Ans. Ex. 2 at 9-10).

The rejection of Petitioner's claim by the state court was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the circumstances. Petitioner's claim rests on an allegation that the Board

1   failed to follow California state law and procedure because it did not designate a person to be

2   present as his representative during his parole hearing, and is not cognizable in a federal petition for

3   writ of habeas corpus. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1986); *Givens v.*

4   *Housewright*, 786 F.2d 1378, 1381 (9th Cir.1986). A writ of habeas corpus is available under 28

5   U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts.

6   *Middleton*, 768 F.3d at 1085; *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983). The United

7   States Supreme Court has held that the protection afforded by the federal due process clause to

8   California parole decisions consists solely of the "minimal" procedural requirements set forth in

9   *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979), specifically, "an opportunity to be heard

10  and . . . a statement of the reasons why parole was denied." *Swarthout v. Cooke*, 131 S.Ct. 859, 862

11  (2011). *See also Greenholtz*, 442 U.S. at 16. Petitioner cites to no clearly established federal law

12  in support of his claim that his federal due process rights were violated by a failure to designate a

13  person to be present at his hearing and, indeed, a thorough search reveals no such precedent.[2] "If

14  no Supreme Court precedent creates clearly established federal law relating to the legal issue the

15  habeas petitioner raised in state court, the state court's decision cannot be contrary to or an

16  unreasonable application of clearly established federal law." *See*, *e.g.*, *Brewer v. Hall*, 378 F.3d 952,

17  955 (9th Cir. 2004).

18         In any event, Petitioner's claim also fails to allege a violation of state law. As the

19  state court found, section 3041.5(a)(3) of the California Penal Code provides that the Department

20  of Corrections and Rehabilitation shall designate a person to represent a prisoner's interests during

21  a parole consideration hearing "unless legal counsel is required by some other provision of law."

22

23         [2] Petitioner cites to *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), a case in which the United

24  States Supreme Court held that revocation of probation without a hearing or counsel *in the circumstances of that specific case* was a denial of due process but that the state was not under a constitutional duty to provide counsel in all probation or parole revocation cases. Here, Petitioner

25  was not facing a revocation of parole as he had not yet been deemed suitable nor had he been released on parole. Moreover, Petitioner was not denied a hearing or counsel in this case. *Gagnon*

26  is thus not on point.

1   Because Petitioner is currently serving an indeterminate life sentence, he was entitled under section

2   3041.7 of the California Penal Code to be represented by counsel at any hearing "to set, postpone

3   or rescind a parole release date."  The record reflects that Petitioner requested to be represented by

4   counsel at his 2007 parole hearing.  In addition, the Board informed Petitioner that he had a right

5   to waive such representation if he so desired. (Ans. Ex. 1A at 16).  After consulting with appointed

6   counsel during his parole hearing, Petitioner declined to waive his right to counsel and instead opted

7   to remain represented by counsel during his parole hearing.  (Ans. Ex. 1A at 18).  Accordingly, as

8   the state court determined, Petitioner was afforded representation at his hearing in compliance with

9   California state law.  Federal courts are "bound by a state court's construction of its own parole

10  statutes." *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993).  *See also Oxborrow v. Eikenberry*,

11  877 F.2d 1395, 1399 (9th Cir. 1989) (on habeas corpus review, a federal court must defer to the state

12  court's construction of its own penal code unless its interpretation is "untenable or amounts to a

13  subterfuge to avoid federal review of a constitutional violation").

14              Petitioner is not entitled to federal habeas corpus review on this claim.

15  **B. Cruel and Unusual Punishment:  Parole Procedures (Claim Two)**

16              Petitioner claims that the procedures employed by the Board to determine whether an

17  inmate is suitable for parole pose a substantial danger that he will serve a sentence disproportionate

18  to his individual culpability, in violation of the cruel and unusual punishment and due process clauses

19  of the United States Constitution.  The Contra Costa County Superior Court considered and rejected

20  Petitioner's claim on collateral review, explaining its reasoning as follows:

21              Petitioner next contends that the parole procedures used by the Board
            creates [sic] "a substantial risk of him serving a sentence
22          disproportionate to his individual culpatibilty and therby [sic]
            violates the cruel and unusual punishment and due process clauses .
23          . ." (Petition at 16-17)  The legal and factual basis of the argument
            is unclear.

24
            However, the California Supreme Court has recognized a prisoner's
25          right to challenge a Board's decision regarding parole in the context
            of the Eighth Amendment.  In 2005 the Court recognized that "even
26          if sentenced to a life-maximum term, no prisoner can be held for a

9

period grossly disproportionate to his or her individual culpability for the commitment offense.  Such excessive confinement, we have held, violates the cruel or unusual punishment clause (art. I, § 17) of the California Constitution."   (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1096, citing *In re Rodriguez* (1975) 14 Cal.3d 639, 646-656, and *People v. Wingo* 91975) 14 Cal.3d 169, 175-183.)  The Court concluded that "[i]mplementation of the cruel or unusual punishment clause, as construed in *Wingo* and *Rodriguez*, does not require the Board, under current law, to set premature release dates for current life-maximum prisoners who, it believes, present public safety risks." (*In re Dannenberg*, *supra*, 24 Cal.4th at 1098.)

Since petitioner has not yet even served his minimum sentence of 26 years, and the Board specifically determined that he presents a risk to public safety, he has no valid claim that his sentence violates the cruel and unusual punishment clause.

. . . .

(Ans. Ex. 2 at 9-10).

A criminal sentence that is not proportionate to the crime for which a petitioner was convicted may violate the Eighth Amendment.  *Harmelin v. Michigan*, 501 U.S. 957 (1991).  Outside of the capital punishment context, however, the Eighth Amendment "does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  *Id*. at 1001 (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983).  *See also United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 2002).  Successful challenges to the proportionality of a particular sentence are, therefore, "exceedingly rare."  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citing *Harmelin*, 501 U.S. at 1001; *Solem*, 463 U.S. at 290; *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

The burden of demonstrating that a sentence is grossly disproportionate to a crime is significant.  As a general rule, a "punishment within legislatively mandated guidelines is presumptively valid."  *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998).  *See also United States v. McDougherty*, 920 F.2d 569, 576 (9th Cir. 1990) (holding that "so long as the sentence imposed by the state court does not exceed statutory maximums, it will not be overturned on Eighth Amendment grounds.").  This is because, as the Supreme Court has recognized, although

they remain subject to the overriding provisions of the United States Constitution, "the primary responsibility for defining crimes against state law and fixing punishments for the commission of those crimes . . . rests with the States." *Payne v. Tennessee*, 501 U.S. 808, 824 (1991). The Eighth Amendment "gives legislatures broad discretion fo fashion a sentence that fits within the scope of the proportionality principle." *Locker*, 538 U.S. at 65. *See also Ewing v. California*, 538 U.S. 11, 24 (2003) ("A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation. Some or all of these justifications may play a role in a State's sentencing scheme. Selecting the sentencing rationale is generally a policy choice to be made by state legislatures, not federal courts." (internal citations omitted)).

In this case, Petitioner stands convicted of first degree murder, a crime punishable by death, life imprisonment without the possibility of parole, or twenty-five years to life imprisonment with the possibility of parole. CAL. PENAL CODE § 190. Petitioner was sentenced to twenty-five years to life for this crime, as well as a penalty enhancement of an additional year to be served consecutively on this sentence for use of a firearm in the commitment offense. Thus, Petitioner's sentence is presumptively valid because it does not exceed the statutorily defined maximum penalties for his conviction, and the Board's determination that Petitioner was not suitable for parole did not enhance Petitioner's sentence beyond that statutory maximum.

Moreover, Petitioner fails to articulate how the denial of parole to an inmate serving an indeterminate life sentence constitutes cruel and unusual punishment, particularly where a parole grant in this context would effectively reduce his presumptively valid maximum sentence of life imprisonment. Petitioner has also failed to articulate how an indeterminate life sentence which carries the possibility of parole is grossly disproportionate to the crime of first degree murder under the Eighth Amendment. Indeed, the United States Supreme Court and the Ninth Circuit have upheld similar sentences for less violent crimes. For example, in *Harmelin*, the United States Supreme Court held that a term of life imprisonment *with no possibility of parole* was not disproportionate to a first offense crime of possession of 672 grams of cocaine. *Harmelin*, 501 U.S. at 1009. *See also*

*United States v. Van Winrow*, 951 F.2d (1069) (9th Cir. 1991) (upholding a life sentence without the possibility of parole for possession of cocaine with intent to distribute). Under *Harmelin*, the Ninth Circuit has observed that "it is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment." *United States v. LaFleur*, 971 F.2d 200, 211 (9th Cir. 1991). *See also Harris v. Wright*, 93 F.3d 581, 584 (9th Cir. 1996) (sentence of life without parole for fifteen-year-old convicted of first degree murder does not raise an inference of gross disproportionality). Of course, in this case, Petitioner did not receive a mandatory life sentence, but rather, a life sentence which carries the possibility of parole. While California has created a liberty interest in receiving parole where parole standards have been met, there is no absolute federal right to release on parole. *Swarthout*, 131 S.Ct. at 862. Petitioner bears the burden of establishing that he is entitled to relief on his cruel and unusual punishment claim, and in this case, has not made even a minimal effort to shoulder that burden.

Moreover, to the extent that Petitioner's claim alleges a violation of due process, the record reflects that Petitioner was present at his 2007 parole suitability hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's determination that he was not suitable for parole. As noted in the above subsection, the federal due process clause requires no more. *Swarthout*, 131 S.Ct. at 862.

Petitioner is not entitled to federal habeas corpus relief on this claim.

**C.  Representation by Counsel and Participation by the Deputy District Attorney (Claim Three)**

Petitioner claims that his due process rights were violated when, pursuant to California state law, counsel was appointed to represent him during his hearing. In addition, Petitioner claims that a deputy district attorney was improperly permitted to participate in his parole consideration hearing.

The Contra Costa County Superior Court considered and rejected Petitioner's claim on collateral review, explaining its reasoning as follows:

[P]etitioner [also] claims that the plain language of Penal Code section 3041.7 provides that "at any hearing for the purpose of setting, postponing, or rescinding a parole release date of a prisoner under a life sentence, such prisoner shall be entitled to be represented by counsel." (Petition at 18) The same section provides that the Board "shall provide by rule for the prosecutor of the county from which the prisoner was committed, or his representative, to represent the interest of the people at any such hearing." (Petition at 18) Petitioner claims that "such authority does not authorize the petitioner's attorney, the district attorney, or his representative to be present at all hearings for the purpose of reviewing parole suitability" and thus participation and comments of petitioner's appointed counsel and the district attorney at his parole suitability hearing violated due process. (Petition at 18-19)

Petitioner's claim is unfounded; the participation of the district attorney is authorized by statute and has been upheld by courts. Furthermore, the participation of an attorney cannot violate a prisoner's rights; although the prisoner may not have a right to an attorney, the attorney's presence helps protect the prisoner's rights and in any case may be waived.

The California Code of Regulations specifically authorizes the presence of the District Attorney at parole consideration hearings for life prisoners such as petitioner. The regulations state:

> (a) Hearings in Which Prosecutors May Participate.
>
> (1) General. Except as otherwise provided in this section, the Chairman or Executive Officer may permit a representative of the office which prosecuted a prisoner or parolee to participate in any board hearing when the prisoner or parolee is represented by an attorney.
>
> . . .
>
> (3) Parole Consideration and Rescission Hearings for Life Prisoners. A representative of the district attorney of the county from which a life prisoner was committed may participate in any parole consideration or rescission hearing for that prisoner. If the Attorney General prosecuted the case for the county, or if the district attorney cannot appear because of a conflict, the Attorney General may appear and participate in the hearing for the district attorney.
>
> (15 Cal. Code. Reg. §2030)

The Code further enumerates the role that the District Attorney may play at the hearing.

> The role of the prosecutor is to comment on the facts of the

13

case and present an opinion about the appropriate disposition. In making comments, supporting documentation in the file should be cited. The prosecutor may be permitted to ask clarifying questions of the hearing panel, but may not render legal advice.

(15 Cal. Code Reg. §2030(d)(2))

Petitioner contends that the Regulation was promulgated under the authority of Penal Code section 3041.7 which is limited in scope to the setting, postponing or rescinding of a parole release date. (Petition at 19) The Regulation actually cites as its authority Penal Code sections 3041 and 3052, which more generally grant the Board the authority to pass rules and regulations regarding granting parole and parole hearings.

The California Supreme Court has remarked that the regulations requiring notice to the prosecutor and consideration of his comments by the Board are not only valid but necessary "to guarantee that the Board has fully addressed the public safety implications of releasing *each individual life-maximum inmate* on parole *before it decides to do so*." (*In re Dannenberg*, *supra*, 34 Cal.4th at 1084-1085, emphasis in original)

As Petitioner points out, the Regulations further provide that "a prisoner or parolee may be represented by an attorney at specific hearings." (15 Cal. Code Reg. § 2256) Although further procedures for the role that the prisoner's attorney may play at such hearings are not specifically outlined in the regulations, those regulations are unnecessary to protect the constitutional rights of the prisoner, as the attorney is there to help enforce such rights. The prisoner may at any time waive representation of counsel if he chooses. Petitioner's right to due process was not violated by the presence of the district attorney or his own appointed attorney.

(Ans. Ex. 2 at 11-14).

Once again, Petitioner fails to state a claim cognizable for federal habeas corpus relief because his claim rests on an allegation that the Board violated California state law by appointing counsel to represent him during his parole consideration hearing and by allowing the deputy district attorney to participate in his hearing. As previously discussed, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Here, the state court determined that state law provided Petitioner a right to be represented by counsel at his parole hearing, and as noted in subsection (V)(A), that Petitioner both requested

to be represented by counsel and subsequently declined his right to waive such representation.  In addition, the state court determined the deputy district attorney's participation in Petitioner's parole hearing was proper under state law.  On habeas corpus review, a federal court defers to the state court's construction of its own laws.  *See Aponte*, 993 F.2d at 707; *Osborrow*, 877 F.2d at 1399.

Petitioner is not entitled to federal habeas corpus relief on this claim.

**D. Victim Statements (Claim Four)**

Petitioner claims that section 3043 of the California Penal Code, which authorizes the Board to consider victim statements in making its parole suitability determination, and section 3042(7)(2)(3), which authorizes the Board to consider information from the trial judge or any other person, constitute invalid amendments to section 190(a) of the Penal Code.   The Contra Costa County Superior Court considered and rejected Petitioner's claim on collateral review, explaining its reasoning as follows:

> Penal Code section 190(a) states that "Every person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life."
>
> Any consideration that the Board may give to statements of a victim, a victim's next of kin, a trial judge, or any other person, does not amend Penal Code section 190(a), nor does it clarify or correct provisions of the statute.   The statute sets a sentence for those convicted of first degree murder; the public statements merely assist the Board in determining the exact length of the sentence within the range set by the statute.  (See *In re Dannenberg*, *supra*, 34 Cal.4th at 1084-1085)
>
> Even if the provisions requiring the Board to consider public statements were invalid, the Board in this case did not consider any victim or victim's next of kin statements or statements by the trial judge.  The only public comments which the Board considered were submitted by Petitioner's friends and family, which recommended that petitioner be paroled.  Petitioner claim thus has no merit.

(Ans. Ex. 2 at 14-15).

As the state court properly explained, section 190 of the California Penal Code provides that murder in the first degree shall be punishable by either death, imprisonment for life

without the possibility of parole, or imprisonment for a term of twenty-five years to life with the possibility of parole.  In this case, Petitioner was sentenced to a term of twenty-five years to life with the possibility of parole on first degree murder conviction, with a penalty enhancement of an additional year to be served consecutively for use of a firearm in the commission of the commitment offense.  Thus, Petitioner's maximum sentence was set at sentencing as life imprisonment.  As the state court explained, any consideration that the Board may give to statements from victims, a trial judge, or any other person does not amend, clarify or correction the provisions of section 190(a) of the California Penal Code, nor does it alter Petitioner's sentence or the terms of his confinement in any way.  Section 190(a) sets forth the potential sentences for persons convicted of first degree murder, while consideration of public statements assist the Board in determining parole suitability and the exact length of a sentence within the statutorily designated range.  As noted above, on habeas corpus review, a federal court defers to the state court's construction of its own laws.  *See Aponte*, 993 F.2d at 707; *Osborrow*, 877 F.2d at 1399.  Moreover, "alleged errors in the application of state law are not cognizable in federal habeas corpus."  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

Nevertheless, the Board did not consider any statements from victims, the trial judge, or any other person that were unfavorable to Petitioner in determining parole suitability at his 2007 hearing.  As the state court noted, the only public statements the Board considered were submitted by Petitioner's friends and family in support of a positive parole suitability determination.  Thus, to the extent Petitioner challenges the constitutionality of the California state statutes permitting the Board's consideration of statements by a victim, the trial judge, or any other person in determining parole suitability, he lacks standing because he cannot demonstrate that he has suffered any injury as a result of the challenged statutes application in his case.  "A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights."  *County Court of Ulster County v. Allen*, 442 U.S. 140, 154-55, (1979).

Petitioner is not entitled to federal habeas corpus relief on this claim.

16

**E.  Petitioner's Status as a "Life Prisoner" (Claim Five)**

Petitioner claims that his indeterminate sentence of twenty-six years to life has been transformed to a determinate sentence of as a result of the application of sentence reduction credits. Petitioner argues that the indeterminate term of twenty-five years to life imprisonment he is serving for his first degree murder conviction is not an automatic life sentence, but instead ranges from twenty-five years to life.  According to Petitioner, this sentence has been converted to a determinate term of sixteen years and eight months as a result of his earned sentencing credits, thus he may no longer be considered a "life prisoner."  The Contra Costa County Superior Court considered and rejected Petitioner's claim on collateral review, explaining its reasoning as follows:

> Petitioner finally claims that he is not a "life prisoner" but is in fact serving a determinate term despite being sentenced to 26 years to life. (Petition at 22-27) Since a sentence of 25 years to life is not an automatic life sentence, the Department of Corrections has the authority to reduce the minimum term imposed for good behavior and participation credits.   Petitioner argues that "by imposing the minimum term of 25 years, as reduced by credits, [the term expires] at 16 years and eight months, and the board has no power to revive it absent competent statutory or constitutional authority."  (Petition at 27)

> The California Supreme Court has directly stated that a sentence imposed under Penal Code section 190(a) (either 15 years to life or 25 years to life) "is in legal effect a sentence for the maximum term" of life imprisonment "subject only to the ameliorative power of the [parole authority] to set a lesser term."  (*In re Dannenberg*, *supra*, 34 Cal.4th at 1097-98.)   Courts have also acknowledged that the sentence of the life prisoner need not be reduced for good behavior and participation credits and would not necessarily reduce the sentence below the minimum set by the statute. (See *In re Dayan*, 231 Cal.App.3d 184 (1991)) On recent federal court decision explained the application of credits to an indeterminate term:

> In *In re Dayan*, 231 Cal.App.3d 184, 282 Cal.Rptr. 269 (1991), the petitioner, serving a sentence of fifteen years to life for second degree murder, alleged that he was entitle to an application of good behavior credits toward his statutory minimum term of fifteen years and toward his actual term set by the Board of Prison Terms (now Board of Parole Hearings). . . . "Release from prison is determined only by the Board.   And, no matter how long a prisoner has been confined, he will not be released until he has been found

suitable for parole.  Cal. Penal Code § 3041(b); Cal. Code Regs tit. 15, § 2281 (a)." . . .

Cal. Penal Code § 190(a) mandates application of good behavior credits by the CDC (now CDCR) against the minimum term for second degree murder (fifteen years) imposed by statute for purposes of establishing the MEPD. *Dayan*, *supra*, *at 188, 282 Cal.Rptr. at 271*.  However, nothing in the statute requires the Board (or CDCR) to reapply the same credits to the actual term it sets.  *Id*., *282 Cal.Rptr. at 271*.  Thus, theoretically, if a prisoner were determined to be parole eligible at the earliest possible time, credits might be of some use in actually reducing the absolute minimum time to be served before release on parole.  *See People v. Rowland*, 134 Cal.App.3d 1, 13-14, 184 Cal.Rptr. 346, 352 (1982).  However, if a prisoner's incarceration time passes his MEPD, and he has yet to be found *eligible for parole*, computation of time credit is meaningless - - he will be released if and when found eligible, and then only after a computation of a release date under Board matrices.

(*Cole v. Horel*, (E.D.Cal.2007) 2007 WL 2221060).

Thus, petitioner's claim that his indeterminate sentence of 25 years to life is actually a determinate term of 16 years and eight months is unfounded.  The application of credits, if any, will only be applied to his term when he is found eligible for parole and a release date has been set.

(Ans. Ex. 2 at 15-17).

Once again, Petitioner's claim fails to allege a violation of federal law, and is thus not cognizable on habeas corpus review.  Moreover, as the state court determined, Petitioner misinterprets the applicable provisions of California State law.  As explained above, Petitioner was sentenced pursuant to section 190(a) of the California Penal Code, which provides that "[e]very person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life."  Here, Petitioner was sentenced to an indeterminate term of twenty-five years to life imprisonment, a sentence which carries the possibility of parole.  Accordingly, he is classified as a life prisoner because section 2000(b)(3) of the California Code of Regulations provides that a life prisoner is a "prisoner serving a sentence of life with the possibility of parole."

18

In California, a prisoner serving an indeterminate life sentence has a minimum eligible parole date (MEPD), which is the "earliest date on which a . . . prisoner may legally be released on parole." 15 CAL. CODE REGS. § 2000(b)(67). At the time Petitioner was sentenced, this date was computed by applying post-sentence good time and work time credits to the minimum term of twenty-five years for first degree murder, plus any additional determinate terms.[3] *See In re Dayan*, 231 Cal.App.3d 184, 186 (1991). Generally,

> Life prisoners may earn postconviction credit for each year spent in state prison. Postconviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, postconviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may postconviction credit advance a release date earlier than the minimum eligible parole date.

15 CAL. CODE REGS. § 2290(a). Nothing in the statute requires application of those same credits to the actual term the Board sets for Petitioner's sentence if it determines that Petitioner is eligible for parole. *Dayan*, 231 Cal.App.3d at 188. It is thus possible that, had Petitioner been deemed eligible for parole at the earliest possible date, sentencing credits might have reduced the amount of time he served prior to his initial parole suitability hearing. *See People v. Rowland*, 134 Cal.App.3d 1, 13-14. Petitioner's suitability for parole and a subsequent release date, however, may only be determined by the Board. In other words, the credits that Petitioner is statutorily entitled to earn as a life prisoner have no direct impact on the amount of time he must actually serve until the Board determines he is suitable for parole and assigns him a parole release date. Petitioner's claim that application of such sentencing credits to his case has converted him from a life prisoner to a determinately sentenced prisoner is without merit.

Petitioner is not entitled to federal habeas corpus relief on his claim.

**E. California's Indeterminate Sentencing Scheme (Claim Six)**

Petitioner's final claim is that the indeterminate sentencing statutes under which he

---

[3] Here, Petitioner received an additional determinate term of one year for a firearm use penalty enhancement.

1   was sentenced are unconstitutional because they do not provide sufficient notice or clarity to those

2   inmates sentenced pursuant to them regarding the penalties which will be imposed for violating a

3   given criminal statute.  According to Petitioner, his indeterminate sentence of twenty-six years to

4   life is a sentence for the minimum term, less any applicable sentencing credits, and not a sentence

5   for the maximum term, which is life imprisonment.  Petitioner contends that, at the time his petition

6   was filed, he had already been incarcerated for four and one half years beyond the date his term of

7   imprisonment terminated under state law.  Thus, his continued detention is unconstitutional.  It

8   appears that the crux of Petitioner's claim is that California's indeterminate sentencing statute is

9   unconstitutionally vague.

10                  Due process requires that a state give its citizens fair notice of potentially

11   incriminating conduct.  *City of Chicago v. Morales*, 527 U.S. 41, 56 (1998).  Similarly, adequate

12   notice is required in sentencing statutes.  "[V]ague sentencing provisions may pose constitutional

13   questions if they do not state with sufficient clarity the consequences of violating a given criminal

14   statute."  *United States v. Batchelder*, 442 U.S. 114, 123 (1979).  "[A] vagueness challenge may not

15   rest on arguments that the law is vague in its hypothetical applications, but must show that the law

16   is vague as applied to the facts of the case at hand."  *United States v. Johnson*, 130 F.3d 1352, 1354

17   (9th Cir. 1997) (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991)).  A sentencing

18   provision is void for vagueness where it "fails to give a person of ordinary intelligence fair notice

19   that it would apply to the conduct contemplated."  *United States v. Rearden*, 349 F.3d 608, 614 (9th

20   Cir. 2003).  *See also Humanitarian Law Project v. Mukasey*, 509 F.3d 1122, 1134 (9th Cir. 2007)

21   ("To survive a vagueness challenge, the statute must be sufficiently clear to put a person of ordinary

22   intelligence on notice that his or her contemplated conduct is unlawful."); *Foti v. City of Menlo

23   Park*, 146 F.3d 629, 638 (9th Cir. 1998) (A statute must be sufficiently clear so as to allow persons

24   of ordinary intelligence a reasonable opportunity to know what is prohibited.); *United States v.

25   Doremus*, 888 F.2d 630, 634 (9th Cir. 1989) (Generally, a statute is void for vagueness "if it fails

26   to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if

20

1  it invites arbitrary and discriminatory enforcement." ).

2          As explained in the above subsection, Petitioner is serving an indeterminate sentence

3  of twenty-five years to life on his first degree murder conviction, imposed pursuant to section 190(a)

4  of the California Penal Code.  Specifically, section 190(a) provides that "every person guilty of

5  murder in the first degree shall be punished by death, imprisonment in the state prison for life

6  without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life."

7  Thus, from the face of the statute, it is clear that the maximum possible term that Petitioner will

8  serve on his sentence will be lifetime confinement.  Any sentencing credits earned by Petitioner, as

9  previously discussed in the above subsection, apply only to reduce his minimum eligible parole date,

10 not the minimum term he will serve on his sentence.  Accordingly, Petitioner "becomes eligible for

11 parole after serving [a] minimum term of confinement," but the determination of his actual term of

12 confinement rests with the Board.  *In re Dannenberg*, 34 Cal.4th 1061, 1078 (2005).  *See also*

13 *People v. Jefferson*, 21 Cal4th 86, 92 (1999).  As noted by the California Supreme Court,

14             traditionally, one who is legally convicted has no vested right to the
             determination of his sentence at less than maximum.  Moreover, a
15             defendant under an indeterminate sentence has no vested right to
             have his sentence fixed at the term first prescribed by the parole
16             authority or any other period less than the maximum sentence
             provided by statute.  It has uniformly been held that the indeterminate
17             sentence is in legal effect a sentence for the maximum term, subject
             only to the ameliorative power of the parole authority to set a lesser
18             term.  Indeed, it is fundamental to an indeterminate sentence law that
             every such sentence is for the statutory maximum unless the parole
19             authority acts to fix a shorter term.  The authority may act just as
             validly by considering the case and then declining to reduce the term
20             as by entering an order to reduce it . . . .

21 *Dannenberg*, 34 Cal.4th at 1097-98.  Thus, under section 190(a) of the California Penal Code, his

22 maximum sentence is, and always has been, life imprisonment, and this is the sentence he will serve

23 absent a finding by the Board that he no longer remains a danger to society and he is suitable for

24 parole.  Under the circumstances of his case, Petitioner has failed to demonstrate vagueness with

25 regard to the statutory scheme under which he was sentenced.

26          Petitioner is not entitled to federal habeas corpus relief on this claim.

21

# VI.  CONCLUSION

Accordingly, IT IS RECOMMENDED that the pending petition for writ of habeas corpus be denied.  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 3, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE